# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-1314

JOHN R. RAMSEY ET AL., PETITIONERS,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

On Petition for Extraordinary Relief

(Argued September 22, 2005                    Decided   March 31, 2006    )

*Ronald L. Smith*, of Washington, D.C., for the petitioners.

*R. Randall Campbell*, with whom *Tim S. McClain*, General Counsel, was on the pleading, both of Washington, D.C., for the respondent.

Before GREENE, *Chief Judge*, and MOORMAN and SCHOELEN, *Judges.*

MOORMAN, *Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed an opinion concurring in part and dissenting in part.

MOORMAN, *Judge*:  The petitioners, veterans John R. Ramsey and Robert C. Johnson, each have an appeal pending before the Board of Veterans' Appeals (Board) seeking separate increased ratings of 10% for service-connected, bilateral tinnitus.  On May 20, 2005, the petitioners jointly filed, through counsel, a petition for extraordinary relief in the nature of a writ of mandamus.  They seek a Court order directing the Secretary and the Acting Chairman of the Board of Veterans' Appeals (Board Chairman) to do the following:  (1) To rescind a memorandum dated April 22, 2005, from the Secretary to the Board Chairman that directs the Board to "stay action on and refrain from remanding," all claims for tinnitus that are currently pending before the Board that were (a) "filed prior to June 13, 2003[,]" where a disability rating higher than 10% is sought or (b) filed prior to June 10, 1999, where the claim "was denied on the basis that the veteran[']s[] tinnitus was not

persistent" (Petition (Pet.), Appendix (A.) at 1); (2) to rescind an April 28, 2005, memorandum, Memorandum No. 01-05-08, from the Board Chairman to the Board, that imposes a stay on the adjudication of "tinnitus rating cases affected by" this Court's decision in *Smith (Ellis) v. Nicholson*, 19 Vet.App. 63 (2005), *appeal docketed*, No. 05-7168 (Fed. Cir. July 11, 2005), including petitioners' appeals (A. at 3); and (3) to order the Board to decide petitioners' appeals in accordance with 38 U.S.C. § 7107. Pet. at 1-2. Subsequently, the Secretary filed a response, the petitioners filed a reply, and the Court held oral argument on September 22, 2005. For the reasons set forth below, the petition will be denied.

## I. BACKGROUND

On October 6, 1988, a VA regional office (RO) granted Mr. Ramsey service connection for tinnitus and assigned a single 10% rating under 38 C.F.R. § 4.87a, Diagnostic Code (DC) 6260 (1988), effective from April 28, 1988. A. at 9-10. The RO decision noted that on examination Mr. Ramsey had complained of constant, bilateral tinnitus. A. at 9. He did not appeal. *See* R. at 11. On May 20, 2002, he filed a claim for an increased rating for tinnitus (A. at 11-12), and on September 9, 2002, the RO denied the claim. A. at 12-14. On May 13, 2003, Mr. Ramsey filed a Notice of Disagreement in which he argued that because he had constant, bilateral tinnitus, he was entitled to a 10% disability rating for each ear in accordance with 38 C.F.R. § 4.25 and DC 6260. A. at 16-18. On November 5, 2003, the RO issued a Statement of the Case, thereafter Mr. Ramsey timely appealed to the Board, which assigned docket number 03-35 495 to that appeal, and on January 12, 2004, his appeal was certified to the Board. A. at 28 (computer printout from the Veterans Appeals Control and Locator System (VACOLS)).

On September 7, 2001, an RO granted Mr. Johnson service connection for tinnitus and assigned a 10% rating under 38 C.F.R. § 4.87a, DC 6260 (2001), effective from November 16, 1998. A. at 22. The RO noted that on examination Mr. Johnson had complained of constant, bilateral tinnitus. A. at 21. On February 5, 2003, Mr. Johnson filed a claim for an increased rating for tinnitus. A. at 23. Because he claimed to have bilateral tinnitus, he also requested separate 10% ratings for each ear. *Id.* In an undated letter, the RO denied his claim and Mr. Johnson appealed to the Board. A. at 24-25. The Board assigned docket number 03-24 377 to that appeal, and on

February 27, 2004, the appeal was certified to the Board. A. at 30 (VACOLS computer printout); Pet. at 8.

On April 5, 2005, while both petitioners' appeals were pending before the Board, this Court issued its decision in *Smith, supra*. In *Smith*, the Court held that "[b]ased on the plain language of the regulations [(38 C.F.R. § 4.25(b) and DC 6260)], the . . . pre-1999 and pre-June 13, 2003, versions of DC 6260 required the assignment of dual ratings for bilateral tinnitus." *Smith*, 19 Vet.App. at 78. Thus, the Court reversed the Board's decision that under 38 C.F.R. § 4.87a, DC 6260, bilateral tinnitus does not qualify for two 10% ratings, one for each ear, and remanded the matter for readjudication to determine whether the appellant had bilateral tinnitus, and, if so, for assignment of a rating consistent with *Smith*. *Id.* The Court also held inadequate the Board's statement of reasons or bases for its denial of a compensable rating for Mr. Smith's tinnitus under pre-1999 DC 6260 and also remanded the matter on that basis. *Id.* at 73-74. Specifically, the Court concluded that the Board failed to explain adequately the basis for its interpretation of "persistent" in the pre-1999 DC 6260 – 38 C.F.R. § 4.87a, DC 6260 (1998), the tinnitus provision of the rating schedule that assigns a 10% disability rating for "Tinnitus: Persistent as a symptom of head injury, concussion or acoustic trauma." *Id.* On June 22, 2005, the Secretary appealed *Smith* to the Federal Circuit (No. 05-7168).

Shortly after *Smith* was issued and while petitioners' claims were pending before the Board, the Secretary issued to the Board Chairman a memorandum that advised the Chairman that the VA General Counsel was recommending that *Smith* be appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). Therefore, the Secretary directed the Board Chairman to stay the adjudication of tinnitus claims and stated as follows:

> To avoid burdens on the adjudication system, delays in adjudication of other claims, and unnecessary expenditure of resources through remand of final adjudication of claims based on court precedent that may ultimately be overturned on appeal, I direct the Board to stay action on and refrain from remanding the following claims until such time as I rescind this memorandum or the General Counsel provides advice and instruction to you upon resolution of the ongoing litigation: (A) all claims in which a claim for tinnitus was filed prior to June 13, 2003, and a disability rating for tinnitus of greater than 10 percent is sought; and (B) all claims in which a claim for service connection for tinnitus filed prior to June 10, 1999, was denied on the basis that the veterans' tinnitus was not persistent for purposes of DC 6260.

A. at 1.

In Memorandum No. 01-05-08, dated April 28, 2005, the Board Chairman directed the Board to stay the adjudication of the tinnitus claims cited in the Secretary's memorandum. A. at 4 (Board Chairman's Memorandum). In addition, the Board Chairman noted that a "case containing a tinnitus claim affected by the *Smith* stay that has been returned to the Board by the [U.S. Court of Appeals for Veterans Claims] will generally be handled in the same manner as non-Court remand cases." A. at 7. In this regard, as to those cases that were remanded by this Court, the Chairman's Memorandum directed the Board not to adjudicate the remanded tinnitus claims, and the Chairman's Memorandum made no reference to whether the Secretary had sought the authority to do so from this Court. The Chairman's Memorandum also stated that the stay applied to any claim that is inextricably intertwined with a claim for a bilateral tinnitus rating (such as a claim for a rating of total disability based on individual unemployability resulting from service-connected disability). A. at 5. Additionally, the Board Chairman's Memorandum indicated that in multiple-claim cases containing claims not subject to the stay, the Board must adjudicate those claims. *Id.*

In a letter dated May 4, 2005, the Board notified Mr. Ramsey that a "temporary stay has been imposed on processing your claim for entitlement to compensation for tinnitus" and provided him a copy of the Board Chairman's Memorandum that explained the basis for the stay. A. at 19. The Board explained that it "cannot predict how long the stay will remain in effect." *Id.* The Board sent to Mr. Johnson an identical letter dated May 11, 2005. A. at 26.

On May 20, 2005, the petitioners moved for extraordinary relief in the nature of mandamus. The Secretary responded, and the Court thereafter granted the petitioners' leave to file a reply. Thereafter, the Court heard oral argument.

## II. ANALYSIS

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act (AWA), 28 U.S.C. § 1651(a). *See Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005); *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990). Where VA fails or refuses to adjudicate a claim presented, the Court has the authority under the AWA to direct the Secretary to act on that claim. *See In re Fee Agreement of Cox*, 10 Vet.App. 361, 371 (1997), *vacated on other grounds*,

4

149 F.3d 1360 (Fed. Cir. 1998); 38 U.S.C. § 7261(a)(2) ("[T]he Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall . . . compel action of the Secretary unlawfully withheld or unreasonably delayed."). However, "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976); *see also Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) ("'[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial . . . .'" (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953))). Before the Court may issue a writ, three conditions must be satisfied: (1) The petitioner must demonstrate a clear and indisputable right to the writ; (2) the petitioner must demonstrate that he lacks adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; and (3) the Court must be convinced, given the circumstances, that the issuance of the writ is warranted. *See Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). The arguments presented by the parties center primarily on the first of these conditions.

Regarding the first condition, the petitioners make three arguments in support of their position that they have an indisputable right to a writ. First, they contend that the Secretary and the Board are refusing to act in accordance with 38 U.S.C. § 7107. Pet. at 7-8. They argue that section 7107 requires the Board to consider and decide its appeals in docket number order and that, as a result of the stay imposed on their appeals, the Board is deciding appeals bearing more recent docket numbers ahead of those of petitioners. Pet. at 8. Specifically, the petitioners assert that the Board docketed their appeals in 2003, assigning docket numbers with "03" as the first two digits (A. at 28, 30), and that the Board has since issued decisions in appeals bearing docket numbers beginning with "04," which indicates that they were docketed in 2004 (A. at 31, 32). Pet. at 8. The petitioners further argue that none of the exceptions in section 7107(a) that allow the Board to decide appeals out of regular order apply here and that section 7107 does not provide the Secretary or the Board Chairman with discretion to stay proceedings for the reasons given in the Board Chairman's Memorandum. Pet. at 7-8. Second, the petitioners argue that the memoranda issued by the Secretary and the Board Chairman violate section 7107 by causing an unreasonable delay in deciding their appeals and impose upon them economic hardship. Pet. at 8-9. Third, they proffer, with supporting

5

affidavits, that at the time they filed their petitions, there were more than 2,700 appeals raising claims for dual ratings for bilateral tinnitus pending before the Board and subject to the stay. Pet. at 10; A. at 33-34 (affidavit of John Maki, Supervisor, National Appeals Office, Disabled American Veterans (DAV), who certified that DAV represents approximately 122 of those pending appeals); A. at 35-36 (affidavit of John McNeill, Jr., Deputy Director, National Veterans Service for the Veterans of Foreign Wars (VFW) of the United States, who certified that VFW is a representative in excess of 2,600 of those appeals).

In response, the Secretary maintains that the petitioners do not have an indisputable right to a writ. Relying on *Tobler v. Derwinski*, the Secretary counters that this Court has long recognized that the Board Chairman and the Secretary have authority to stay administrative proceedings while an appeal to the Federal Circuit is being contemplated and that it is reasonable to impose a stay of petitioners' claims for similar reasons here. Response (Resp.) at 2, 4 (citing *Tobler*, 2 Vet.App. 8, 12 (1991)). The Secretary, citing *Nash v. West*, 11 Vet.App. 91, 93 (1998), and *Bullock v. Brown,* 7 Vet.App. 69, 69-70 (1994) (per curiam order), in which mandamus petitions based on unreasonable delay were denied, argues that any delay resulting from the imposed stays has not been unreasonable. *Id.* at 3-4. The Secretary further asserts that after the legal challenge is resolved in *Smith*, the temporary stay will be lifted and decisions in the tinnitus-rating cases will be issued with due diligence according to their docket numbers. *Id.* at 6. He contends that "to give excessive weight to the order of docketing would mean that the Board could never temporarily stay a class of cases to develop and resolve a core legal issue or, at least, would have to freeze the entire docket." *Id.* The Secretary maintains that the Board Chairman possesses "certain inherent powers that are necessary to carry out the administrative and managerial functions of the Board and the appeals pending at the Board" and that these "powers must include the authority to stay pending cases when the efficient management of the docket reasonably requires." *Id*. at 7. The Secretary acknowledges that although the stay imposed in the petitioners' appeals is not the product of a "burdened system," it is not an "arbitrary" act. Resp. at 7-8. He maintains that the stay is imposed to avoid (1) needless burdens on the adjudication system, (2) delays in the adjudication of other claims, and (3) unnecessary expenditure of resources through remand or final adjudication of claims based on judicial precedent that might ultimately be overturned on appeal. *Id.* He argues that the demands and resources of the

Secretary are factors to balance in the writ equation. *Id.* at 8 (citing *Costanza v. West*, 12 Vet.App. 133, 134 (1999)).

In reply, the petitioners argue that the Secretary's reliance on *Tobler* as authority for him to stay proceedings is misplaced because the Court in *Tobler* did not consider whether the Secretary or Board Chairman can impose a stay of proceedings and it did not consider section 7107. Reply at 3-5. They argue that they are not complaining of ordinary delay but maintain that the Secretary and Board Chairman have violated a statutory right granted to veterans by Congress. *Id.* at 5. They assert that the delay here is unlawful because later-docketed cases have been decided in violation of section 7107. Further, they contend that the Secretary's reliance on this Court's decisions in *Nash* and *Bullock*, both *supra*, are not on point because they do not involve the assertion that rights under section 7107 have been violated. Reply at 6-7. They posit that the Court should hold that, unlike delay inherent in the routine administrative adjudication process, delay intentionally imposed by the Secretary in direct violation of section 7107 is *per se* unreasonable. Reply at 7. They also contend that section 7107 is not ambiguous and must be implemented according to its terms. *Id.* at 10. Finally, the petitioners assert that they do not dispute the Secretary's assertion concerning the Board Chairman's "inherent powers" but that he does not possess authority to violate the law. *Id.* at 10-11.

Initially, we note that we are not reviewing the Board Chairman's Memorandum imposing the stay as a decision of the Board but are reviewing it as part of the Court's examination of the reasons for the asserted inaction or delay in the processing of the petitioners' appeals at the Board to determine whether a writ must issue. In determining whether the petitioners have demonstrated a clear and indisputable right to a writ based on the asserted violation of section 7107, the Court must examine whether the Secretary has the authority to stay cases and how section 7107 might affect any such authority. We also examine below the additional question implicated here, whether it is unlawful for the Secretary to stay the effect of *Smith*, *supra*, on cases, including those of the petitioners, that are pending at the Board.

A. Appropriateness of Stay of Proceedings at Board – Generally

Before addressing whether the Secretary has authority to stay claims at the Board, we review a number of cases from this Court and the Federal Circuit that have discussed the availability of stays on claims processing at the Board. Court decisions have recognized that there are times when

staying adjudications at the Board may be appropriate. *See Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs (NOVA v. Sec'y)*, 314 F.3d 1373 (Fed. Cir. 2003) [hereinafter *NOVA II*]; *NOVA v. Sec'y*, 260 F.3d 1365 (Fed. Cir. 2001) [hereinafter *NOVA I*]; *Lane v. West*, 11 Vet.App. 506 (1998) (per curiam order) [hereinafter *Lane II*]; *Tobler*, *supra*. At the same time, we acknowledge that these decisions did not address specifically the language in section 7107. In *Tobler*, the Board, following the advice of the VA General Counsel, expressly refused to consider when adjudicating the appellant's claim a precedential decision by this Court in *Fugere v. Derwinski*, 1 Vet.App. 103 (1990). *See Tobler*, 2 Vet.App. at 10. The VA General Counsel had advised the Board that the Court's decision had not become final because VA had filed an appeal with the Federal Circuit. In *Tobler,* we held:

> [A] decision of this Court, unless or until overturned by this Court *en banc*, the United States Court of Appeals for the Federal Circuit, or the Supreme Court, is a decision of the Court on the date it is issued; any rulings, interpretations, or conclusions of law contained in such a decision are authoritative and binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board of Veterans' Appeals, and the Secretary in adjudicating and resolving claims.

*Id.* at 14. Today, we reaffirm that holding.

In reaching this holding, the *Tobler* Court examined the decisions of other circuits that had been presented with a similar issue. The U.S. Court of Appeals for the Second Circuit in *Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980), had addressed the issue when the National Labor Relations Board failed to follow that court's precedent. Relying on *Ithaca College*, we "join[ed] in its legal conclusions as well as its description of the choices open to an agency which disagrees with a controlling conclusion of law" and then quoted the following language from *Ithaca College*:

> Of course, we do not expect the Board or any other litigant to rejoice in all the opinions of this Court. When it disagrees in a particular case, it should seek review in the Supreme Court. During the interim before it has sought review or while review is still pending, it would be reasonable for the Board to stay its proceedings in another case that arguably falls within the precedent of the first one. However, the Board cannot, as it did here, choose to ignore the decision as if it had no force or effect. Absent reversal, that decision is the law which the Board must follow. The Board cites no contrary authority except its own consistent practice of refusing to follow the law of the circuit unless it coincides with the Board's views. This is intolerable if the rule of law is to prevail.

*Tobler*, 2 Vet.App. at 12 (quoting *Ithaca Coll.*, 623 F.2d at 228). Accordingly, in *Tobler* we recognized, without further explanation, that one choice open to an agency that disagreed with a controlling decision of the Court was to "stay its proceedings in another case that arguably falls within the precedent of the first one" while seeking appellate review of that decision.

In *Lane*, the petitioner on June 24, 1998, filed a petition for a writ of mandamus, which requested that this Court order the Board to issue a decision on the petitioner's section 7111 clear and unmistakable error (CUE) motion. *Lane II*, 11 Vet.App. at 507. In February 1998, the Board Chairman had informed the petitioner that the Board was engaged in promulgating regulations necessary to carry out the provisions of the Revision of Veterans' Benefits Decisions Based on Clear and Unmistakable Error Act, Pub. L. No. 105-111, 111 Stat. 2271 (Nov. 21, 1997) (codified at 38 U.S.C. §§ 5109A, 7111, 7251), and that the Board had decided "to defer determinations on all requests for revision of prior BVA decisions on the grounds of CUE until these regulations have been finalized." *Lane II*, 11 Vet.App. at 507 (quoting Board Chairman's statement). The Board Chairman stated: "When final regulations become effective, the Board will begin to adjudicate these requests. At that time, the Board will review your request for revision of a prior BVA decision on the grounds of CUE." *Id.*

The Court in *Lane II* noted its prior order in that same case, *Lane v. West*, 11 Vet.App. 412, 415 (1998) (per curiam order) [hereinafter *Lane I*], in which it had directed the Secretary to show cause why the Court should not issue a writ of mandamus ordering the Board without delay to issue a decision on the CUE motion. In that prior order, the Court had noted that (1) the Board Chairman had informed the appellant that his claim would not be adjudicated for some unspecified period of time, (2) the Secretary had offered no information to the Court as to the status of the Board's pending regulations, or when and if final regulations would be promulgated, and (3) the Secretary had offered no reason why adjudication of the acknowledged claim of CUE must await rulemaking. *Lane I*, 11 Vet.App. at 414. The Court concluded that it could find "no justification on the record presently before it for the decision 'to defer determinations on all requests for revision of prior BVA decisions on the grounds of CUE'." *Id.* Subsequently, the Secretary filed a response to the Court's order to show cause.

9

The Court in *Lane II* noted that the authority cited in the Secretary's response for the adoption of a policy of deferral was the Secretary's general rulemaking authority under 38 U.S.C. § 501(a) and the legislative history of the 1997 CUE Act. *Lane II*, 11 Vet.App. at 508. The Court then stated that there was no question that the Secretary possesses the authority to promulgate rules and regulations, but section 501(a) did not confer unlimited time to do so. The Court observed that the legislative history for the 1997 CUE Act was silent on a policy of deferral of adjudications and that Congress clearly expressed disapproval of delay in adjudicating the claims of veterans in another analogous context in section 302 of the VBIA, which required the Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court. *Id.* at 509. It was therefore noted that it was "perhaps, of considerable significance that the Secretary ha[d] not advised the Court how many new claims have been or continue to be filed under the 1997 CUE Act." The Court stated:

> [T]here could be thousands of such claims, and therein lies the seed of a problem of potentially great magnitude. Simply put, the longer it takes to promulgate regulations, the greater the number of claims and the greater the impact on already-existing backlogs at the BVA, the office of the counsel for the Secretary, and the Court.

*Id.* The Court admonished that "a lack of urgency [or] an inexcusable delay in promulgating such rules[] could adversely impact not only those veterans who filed claims under the 1997 CUE Act, but all veteran-claimants" and clarified that "[i]n short, such factors must be considered in this Court's determinations as to whether there has been 'action of the Secretary unlawfully withheld or unreasonably delayed'," 38 U.S.C. § 7261(a)(2), and if "the ultimate answer is in the affirmative, a writ of mandamus will have to issue." *Lane II*, 11 Vet.App. at 509. The Court directed the Secretary to file a supplemental response to the petition that included the number of claims filed under the 1997 CUE Act, the current status of the rulemaking process, the steps available to or already taken to expedite the rulemaking process, and the anticipated date from which the appellant will no longer have to wait to have his claim adjudicated. *Id.* Accordingly, the factors that the Court considered important in determining whether to issue a writ in that case were (1) the number of cases affected by the Secretary's deferral of action and (2) the timeframe involved for the promulgation of final regulations. The Court issued its order in *Lane II* in October 1998.

10

Thereafter, on February 17, 1999, the Court denied the petition for a writ of mandamus. *Lane v. West*, 12 Vet.App. 220, 222 (1999) (per curiam order). The facts before the Court demonstrated that the Secretary's January 1999 response indicated that final rules implementing the 1997 CUE Act were published in the Federal Register that same month and that the Board was sending the appellant a letter stating that if the appellant wanted it to proceed with adjudication of his CUE claim, it would promptly proceed to do so. *Id.*

Similar to this Court in the above cases, the Federal Circuit in *NOVA I* and *NOVA II*, both *supra*, recognized the appropriateness of staying proceedings in cases that were then pending with the Board. In imposing a stay at VA, including at the Board, on the processing of claims for dependency and indemnity compensation benefits under 38 U.S.C. § 1318, the Federal Circuit determined "that it would be inappropriate for the agency to further process claims under section 1318 until the validity or invalidity of the regulation [(38 C.F.R. § 3.22)] is finally established." *NOVA I*, 260 F.3d at 1380. The Federal Circuit directed that expedited rulemaking be concluded by VA (subject to any petitions for reconsideration) within 120 days after the issuance of the court's mandate in the case and that, if VA pursued notice-and-comment procedures and could not conclude them within the set time frame, VA could move for a reasonable extension of time. *Id.* at 1381. The court noted that although it was not invalidating regulation § 3.22, "its validity is at this point open to question." *Id*. at 1380. In *NOVA II*, the Federal Circuit ordered the Secretary to continue to "stay the further processing of claims under sections 1311(a)(2) and 1318 where the survivor seeks to reopen a claim on grounds of new and material evidence, since the permissibility and reasonableness of interpreting the statutes to bar such claims remains to be determined." *NOVA II*, 314 F.3d at 1382. Accordingly, the Federal Circuit recognized that a stay of proceedings in appeals pending before the Board was appropriate for certain claims the review of which was dependent on a regulation that may be held to be invalid. However, the Federal Circuit did not reach the question of the Secretary's or Chairman's independent authority to order a stay nor did it consider the potential application of section 7107 to the matter before it.

B. Secretarial Authority to Stay Proceedings – Generally

Before addressing the effect of section 7107, we will address the general statutory framework asserted for providing authority for a stay in certain cases. The Secretary relies on 38 U.S.C.

§§ 501(a) and 7101 for his authority to stay proceedings at the Board in cases affected by this Court's opinion in *Smith*, *supra*. Resp. at 6. He argues that the chapter 71 statutory scheme recognizes his management control over Board action and that Congress has charged the Board Chairman with the responsibility for conducting the business of the Board in a proper and timely manner. Resp. at 6-7. The Secretary maintains that he possesses "certain inherent powers that are necessary to carry out the administrative and managerial functions of the Board and the appeals pending at the Board" and that "[t]hese powers must include the authority to stay pending cases when the efficient management of the docket reasonably requires." Resp. at 7. The petitioners do not dispute the Secretary's assertion that he has inherent powers that are necessary to carry out administrative and managerial functions of the Board, but they argue that he does not possess authority to violate the clear direction of a statute, i.e., section 7107(a)(1). R. at 10-11.

We recognize that there is no direct authority in title 38 that expressly provides the Secretary with authority to stay proceedings in appeals pending before the Board. Therefore, we will examine the statutory scheme to determine whether there is any implicit authority. Section 7101(a) provides:

> (a) There is in the Department a Board of Veterans' Appeals . . . . The Board is under the administrative control and supervision of a chairman directly responsible to the Secretary. The Board shall consist of a Chairman, a Vice Chairman, and such number of members as may be found necessary in order to conduct hearings and dispose of appeals properly before the Board in a timely manner.

38 U.S.C. § 7101(a). The Secretary also possesses the authority to promulgate rules and regulations. Section 501(a) provides: "The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including . . . the manner and form of adjudications and awards." 38 U.S.C. § 501(a)(4). In addition, section 511(a) states:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a). The exceptions set forth in section 511(b) include matters arising under chapter 72 of title 38, which covers the appeals process to the Board, this Court, the Federal Circuit, and the Supreme Court.

Examining section 7101(a) together with sections 501(a)(4) and 511, we observe that these statutes give the Board the authority to "dispose of appeals properly before the Board in a timely manner," and the Secretary the authority to "prescribe all rules and regulations which are necessary or appropriate" regarding "the manner and form of adjudications and awards" and to "decide all questions of law and fact necessary to a decision by the Secretary." 38 U.S.C. §§ 501(a)(4), 511, and 7101(a). The authority to decide "all questions of law" means the authority to interpret and apply the relevant law. *Id.* The general authority of the Secretary to interpret and apply the relevant law and of the Board to dispose of appeals in a timely manner authorizes the Secretary to manage the Board in its dispositions of cases and to consider the relevant law in its control of the dispositions of the appeals pending on the Board's docket and to do so with economy of time and effort. This management reasonably includes a decision on whether a particular appeal at the Board must be stayed pending an interpretation of law – an interpretation to be provided by the Secretary in a regulation or General Counsel opinion. *See* 38 U.S.C. § 7104(c) (providing that "Board shall be bound in its decisions by the regulations of the Department, instructions by the Secretary, and the precedent opinions of the chief legal officer of the Department"). Caselaw supports the proposition that an agency's authority to act may be based on general provisions in a statute. *See*, *e.g.*, *Nat'l Cable & Telecomm. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 338-42 (2002) (interpreting the Pole Attachments Act's sections 224(b) and 224(a)(4), which authorized the Federal Communications Commission (FCC) to "regulate the rates, terms, and conditions for pole attachments," as authorizing the FCC to regulate rates for pole attachments of wireless carriers, even though other sections of the act, which specifically authorized the regulation of pole attachment rates, did not cover wireless carriers and noting that nothing in the specific provisions of the latter sections limits the former (interpreted) provisions), *cited in Fag Italia S.p.A v. United States*, 291 F.3d 806, 819 (Fed. Cir. 2002) (noting that "despite the fact that the FCC lacked authority to regulate such carriers under certain specific sections of the statute, the Supreme Court [in *Nat'l Cable & Telecomm. Ass'n*, *supra*,] found authority in more general provisions of the statute).

13

In addition, the Court notes that interpreting the general provisions of section 501, 511, 7101, and 7104(c) as providing implied authority of this kind is required because it would be unreasonable or impractical to expect the Congress to detail all the methods by which the Board handles its cases. These are precisely the matters that agencies are expected to address in the exercise of their executive function. Moreover, the Secretary's authority to stay matters is supported in general by well-settled caselaw that agencies have discretion to develop case management techniques that make best use of their limited resources. *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970) ("[The agency] is entitled to a measure of discretion in administering its own procedural rules in such a manner as it deems necessary to resolve quickly and correctly urgent [ ] problems."); *see also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 544 (1978) ("Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."'" (quoting *FCC v. Schreiber*, 381 U.S. 279, 290 (1965) (quoting *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940))); *Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 544 ( "[A] very basic tenet of administrative law [is] that agencies should be free to fashion their own rules of procedure."); *cf. Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The Secretary's inherent authority to stay matters pending before the Board, however, is not without limitations. For example, such authority is balanced against Congress's clearly expressed disapproval of delay in adjudicating the claims of veterans. *See Lane II*, 11 Vet.App. at 509 (noting in analogous context congressional disapproval of delay in adjudicating claims of veterans in section 302 of the Veterans' Benefits Improvement Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note), which required the Secretary to provide for "expeditious treatment" for claims remanded by the Board or Court); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (order) (noting that "because district courts have broad discretionary powers to control their dockets, stays will not be vacated unless they are 'immoderate or of an indefinite duration'" (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982))).

14

In addition, as discussed below in section II.D., the Secretary's discretion is also limited where this Court or another court has issued a decision that would be affected by a particular stay.

Therefore, in the absence of statutory limitations or limitations imposed by this Court or another court, the Secretary's and Chairman's broad authority to manage the activities of the Board necessarily includes the authority to stay classes of cases before it for well-articulated reasons of sound case management. The petition before this Court, however, asserts that there exists a statutory limitation on that authority and that the stay in this instance is a violation of section 7107 by the Secretary and Board Chairman. We proceed now to determine whether the Secretary and Board Chairman have unlawfully withheld or delayed action under section 7107.

### C. Effect of Section 7107 on Stay Authority

#### 1. Plain Meaning

The petitioners argue that the stay imposed by the Secretary and Board Chairman is not authorized because it is prohibited by the plain meaning of section 7107. The petitioners maintain that section 7107 requires the Board to decide a case "in regular order according to its place upon the docket" and that there is no specified exception in section 7107 that allows the Board Chairman to stay cases. As discussed below, even on the face of that quoted language, it is not absolutely clear that the Board is required to process cases in strict numeric order, but the petitioners argue that that language requires strict numeric order, and the Court finds it necessary to address that argument.

Section 7107 provides in pertinent part:

> (a)(1) Except as provided in paragraphs (2) and (3) and in subsection (f), each case received pursuant to application for review on appeal shall be considered and decided in regular order according to its place upon the docket.
>
> (2) A case referred to in paragraph (1) may, for cause shown, be advanced on motion for earlier consideration and determination. Any such motion shall set forth succinctly the grounds upon which the motion is based. Such a motion may be granted only –
> (A) if the case involves interpretation of law of general application affecting other claims;
> (B) if the appellant is seriously ill or is under severe financial hardship; or
> (C) for other sufficient cause shown.

(3) A case referred to in paragraph (1) may be postponed for later consideration and determination if such postponement is necessary to afford the appellant a hearing.

. . . .

(f) Nothing in this section shall preclude the screening of cases for purposes of–
(1) determining the adequacy of the record for decisional purposes; or
(2) the development, or attempted development, of a record found to be inadequate for decisional purposes.

38 U.S.C. § 7107(a), (f).

The Court interprets a statute de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). The Court is presented with two questions when it reviews an agency's construction of a statute: (1) Whether Congress has directly spoken to the precise question at issue; if so, that is the end of the matter, and the Court and agency are required to "give effect to the unambiguously expressed intent of Congress," and (2) if Congress has not directly addressed the precise question at issue, whether the agency's answer to the question is a permissible construction of the statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984). To determine Congress's intent, the traditional tools of statutory construction are employed. *See id.* at 843 n.9. In determining whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself, for "'[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron*, 467 U.S. at 842); *see Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc); *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)). Only where a statute's plain meaning leads to an absurd result that Congress clearly never could have intended is this "plain meaning rule" abandoned for a review of the applicable legislative history and statutory construction. *See Gardner*, 1 Vet.App. at 587-88. If "it is clear that . . . the literal import of the text . . . is inconsistent with the legislative meaning or intent, or such interpretation leads to

16

absurd results," NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.07 (5th ed. 1992), the Court will not reach that result. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994); *United States v. Brown*, 333 U.S. 18, 25-26 (1948); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Brooks v. Donovan*, 699 F.2d 1010, 1011-12 (9th Cir. 1983); *Demko v. Univ.*, 44 Fed. Cl. 83, 87 (1999); *Faust v. West*, 13 Vet.App. 342, 350 (2000).

The language of section 7107 plainly states that, except as provided therein, "each case received pursuant to application for review on appeal shall be considered and decided in regular order according to its place upon the docket." 38 U.S.C. § 7107(a)(1). The exceptions to the "regular order" are the following: (1) Where a case is "advanced" for earlier consideration and determination; (2) where a case is "postponed for later consideration and determination if such postponement is necessary to afford the appellant a hearing"; and (3) where a case is "screen[ed]" for purposes of determining the adequacy of the record or developing a record found to be inadequate for decisional purposes. 38 U.S.C. §§ 7107(a)(1), (a)(2), (a)(3), (f). Regarding the exception allowing a case to be "advanced" on the docket, the statute requires that a motion be filed and that such motion be granted only (A) if the case involves interpretation of law of general application affecting other claims; (B) if the appellant is seriously ill or is under severe financial hardship; or (C) for "other sufficient cause shown." 38 U.S.C. § 7107(a)(2)(A), (B), (C). Section 7107 is silent concerning whether the Secretary or the Chairman may stay a case (or group of cases) on appeal to the Board pending the issuance of an interpretation of law of general application that would affect that case (or group of cases). Read literally, therefore, save for the three categorical exceptions, the Board is required by this statute to "consider and decide" cases in the exact order in which they appear on the docket.

What then is the logical outcome of such a plain-meaning interpretation under the circumstances presented in this petition? We conclude that strict adherence to docket order in the consideration and decision of cases before the Board would necessarily lead to an absurd result when considering the statute's overall structure and concepts relating to effective review of appeals. *See Trilles*, 13 Vet.App. at 321-24 (holding that language of 38 U.S.C. § 6103 is completely silent on forfeiture process and whether Congress intended that a section 6103 bar would result in forfeiture of procedural rights so as to prevent the affected person from ever revisiting or again contesting the

17

basis for forfeiture decision and stating that were the Court to conclude that the statute itself, literally read, provided for such bar, the Court would hold that to be an absurd result when considering the statute's overall structure and concepts of fundamental fairness).

The following examples illustrate the absurd results that would flow from construing section 7107 according to its plain or literal meaning. A literal reading would mean that the Board would be forced to decide an appeal that was next in the "regular order" even though the Secretary had issued a proposed rule beneficial to the claimant, and was in the process of promulgating a final regulation based on that proposed rule. Applying a literal reading, as the petitioners would have us do, to the plain language of the statute provides no basis on which the Board could delay issuance of a decision in that appeal pending the issuance of the final regulation. Under such circumstances, there is no motion to "advance" other cases not affected by the proposed rule, there is no postponement due to a hearing, and there is no screening. Because none of the stated exceptions would apply, the plain language of section 7107 would require that the Board decide the appeal, and, as a result, the claimant would not be given the benefit of the impending regulation. Alternatively, if the Board delayed a decision of that appeal pending the issuance of the final regulation, the literal reading of the statute would require that the Board issue no decisions on any appeals later in docket order (i.e., appeals with more recently assigned docket numbers) until the appeal that was affected by the new regulation was decided. Congress could not have intended that the system of deciding appeals in docket order deprive claimants of anticipated benefits and treat differently claimants who are similarly situated or, alternatively, that consideration and decision of all appeals be delayed in order that those claimants affected by the impending regulation would receive beneficial interpretations of law.

Next, a literal reading of the language of section 7107 would mean that one member of the Board who is ready to issue a decision in one appeal would not be able to do so if another member of the Board is considering another appeal bearing a docket number assigned before that of the appeal ready for issuance of a decision. Requiring that Board decisions be issued strictly in the "regular order" of their docket numbers in a system where there are approximately 56 members of the Board (not including acting Board members) who are considering over 40,000 appeals, *see* Report of the Chairman, Board of Veterans Appeals Fiscal Year 2004 at 6-8, produces an absurd

result because it unnecessarily delays the processing of appeals at the Board. At oral argument, the petitioners conceded that, under the circumstances presented in this second example, the Board member considering the appeal with the newer docket number should be able to issue that decision even though another Board member is still considering an appeal with an older docket number. Yet, such a sensible accommodation is outside the plain language of the statute.

Indeed, the petitioners have provided the Court with two Board decisions on bilateral tinnitus cases that were issued, as a matter of course, out of "regular order." A. at 31, 32. These two Board decisions were issued in appeals with docket numbers beginning with "04," which indicates that they were docketed in 2004. A. at 31, 32. Both were decided in March 2005, before the Board Chairman's April 2005 Memorandum and the May 2005 stay imposed in the petitioners' own appeals. Moreover, these decisions were issued prior to any Board decision in the petitioners' appeals, which have older docket numbers (i.e., numbers beginning with "03"). Before any stay was imposed, the Board issued these two bilateral tinnitus decisions out of regular docket order. We doubt that these two decisions, cited by the petitioners, represent a departure from regularly followed, longstanding, and sensible Board processes.

Accordingly, as shown by the illustrative examples above, we conclude that administering section 7107 as written would unavoidably lead to absurd results while simultaneously depriving the appeals system of the flexibility it requires to manage its caseload. Therefore, section 7107 cannot be read literally. *See Trilles*, 13 Vet.App. at 321. We conclude that section 7107 must be read so as to afford the Board some flexibility in considering and deciding appeals so that efficiency and fairness in processing appeals is promoted and that, therefore, section 7107 cannot be read as a mandated, exclusive set of rules by which the Board must consider and decide cases.

As discussed above, the petitioners' interpretation of section 7107(a) (i.e., a plain reading of the statute) would lead to absurd results inconsistent with the overall statutory scheme – the Board Chairman could never stay proceedings in an appeal even where Board review of the claim is dependent on a regulation whose validity has been called into question by the Federal Circuit (*see NOVA I* and *NOVA II*, both *supra*) or where the outcome would be affected favorably by a final regulation that is soon to be promulgated. *See X-Citement Video, Inc.*, 513 U.S. at 68-69 ("Some applications of respondent's position would produce results that were not merely odd, but positively

19

absurd . . . . We do not assume that Congress, in passing laws, intended such results."); *Timex V.I., Inc.*, 157 F.3d at 886 ("[S]tatutory construction that causes absurd results is to be avoided if at all possible."). Because the petitioners' asserted plain language interpretation of section 7107(a) would dictate unthinking reliance on docket order to manage a complex, pro-veteran adjudicatory process, thus leading to absurd results and interruption of the statutory scheme to treat all veterans' claims fairly and efficiently, we cannot adopt that interpretation.

### 2. Congressional Intent

Having concluded that a literal reading, demanding rote adherence to strict docket order in interpreting this statute, would yield absurd results, we examine next the legislative history to discern congressional intent with respect to the processing of appeals at the Board. The parties agree that the legislative history is scant. A 1933 "Veterans Regulation" promulgated by Executive Order No. 6230 contained provisions that formed the basis for current section 7107(a). Veterans Regulation No. 2(a), Part II, para. IX, Ex. Ord. No. 6230 (July 28, 1933). The regulation provided in part:

> All cases received pursuant to application for review on appeal shall be considered and decided in regular order according to their places upon the docket; however, for cause shown a case may be advanced on motion for earlier consideration and determination. Every such motion shall set forth succinctly the grounds upon which it is based. No such motion shall be granted except in cases involving interpretation of law of general application affecting other claims, or for other sufficient cause shown.

*Id*. President Franklin D. Roosevelt promulgated this Veterans' Regulation pursuant to his authority under section 9, title I, of Public Law No. 2, 73d Congress, entitled "An Act to maintain the credit of the United States Government," which provided:

> Claims for benefits under this title shall be filed with the Veterans' Administration under such regulations, including provisions for hearing, determination, and administrative review, as the President may approve . . . . No person who is entitled to any benefits under this title shall participate in any determination or decision with respect to any claim for benefits under this title.

Act of March 20, 1933, Pub. L. No. 73-2, Title I, § 9, 48 Stat. 8. The regulatory provision was repealed in 1957, and the language was retained in 38 U.S.C. § 3306. Act of June 17, 1957, Pub. L. No. 85-56, Title XIII, § 1396, 71 Stat. 129. The section was thereafter redesignated as 38 U.S.C.

§ 4006 (Pub. L. No. 85-857, § 4006, 72 Stat. 1242 (Sept. 2, 1958)), as 38 U.S.C. § 4007 (Pub. L. No. No. 87-666, § 1, 76 Stat. 554 (Sept. 19, 1962)), and currently as 38 U.S.C. § 7107 (Pub. L. No. 102-40, Title IV, § 402(b)(1), 105 Stat. 238 (May 7, 1991)).

Notably, this original provision existed 55 years before this Court and judicial review were established. The last sentence of section 9 of the original 1933 authorizing legislation, which prohibited any VA adjudicator who was entitled to veterans' benefits from participating in any decision with respect to any claim for veterans' benefits, is instructive in establishing the context in which these regulations were originally promulgated. It appears that Veterans' Regulation 2(a) was promulgated at a time when there was concern that claims be adjudicated in a fair and impartial manner, free from cronyism. The publication of Veterans Regulation No. 2(a), part II, para. IX, providing that appeals be considered and decided in regular order according to their places upon the docket and that, for cause shown, a case may be advanced on motion for earlier consideration and decision, is consistent with this concern that each veteran's claim not be subjected to unfair manipulation in order to obtain favorable or expedited treatment or to obtain an unfair advantage in having his or her case decided ahead of that of another claimant.

The statute has been amended three times during the Court's existence. In July 1994, section 7107 was amended to add provisions relating to hearings, including new section 7107(b), which stated: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." Pub. L. 103-271, § 7, 108 Stat. 742 (July 1, 1994). The amendment repealed section 7110 and moved hearing provisions in existing sections 7102, 7104, and 7110 to amended section 7107, thereby combining the provisions governing the docketing of appeals and the scheduling of hearings into one section. *See* 140 CONG. REC. H4350, H4352 (daily ed. June 13, 1994) (Committees on Veterans' Affairs of the Senate and House of Representatives' Explanatory Statement of Compromise Agreement on S. 1904). In urging his colleagues in the Senate to support S. 1904, Mr. Rockefeller, Chairman of the Senate Committee on Veterans' Affairs noted that "[a] critical part of VA's mission is to make sure veterans and their families receive fair, efficient, and timely adjudication of their benefit claims. Timeliness is simply vital." 140 CONG. REC. S4757, 4758 (Apr. 21, 1994). Mr. Rockefeller noted that the purpose of the pending measure, which included provisions in addition to those in amended section 7107, was to allow the Board "to begin to reduce its present back log

21

and improve its decisionmaking timeliness" and to allow the Board "to become more productive." *Id.* at S4759.

In November 1994, section 7107 was again amended to permit early screening of appeals at the Board to determine whether further development of individual appeals is warranted. Pub. L. 103-446, § 303, 108 Stat. 4645 (Nov. 2, 1994). Specifically, new subsection (f) was added, and in subsection (a)(1), "Each case" was stricken and "Except as provided in subsection (f), each case" was added in its place. *Id.* Finally, in 1998, section 7107(a)(1) was amended by inserting "in paragraphs (2) and (3) and" after "Except as provided," and the statute was further amended to read as it currently does in section 7107(a)(2) and (a)(3). Pub. L. 105-368, Title X, § 1003, 112 Stat. 3363 (Nov. 11, 1998).

Although there is little in this legislative background to help discern explicit congressional intent on the question at hand, the petitioners' counsel at oral argument argued that Senator Rockefeller's statements indicated a desire to reduce delay in deciding cases. To be sure, Senator Rockefeller's statement included an allusion to the value of timely decisionmaking. Fairness and efficiency were also cited by Senator Rockefeller as critical to VA's mission.

We conclude that there is nothing in the legislative history that indicates a clear intent that section 7107 be read as an exclusive set of rules by which the Board must consider and decide cases. It is more reasonable to conclude that Congress did not intend to micromanage the Board. The limited legislative history that is available states a concern only that veterans and their families receive fair, efficient, and timely adjudication of their benefits claims and that there be fairness in adjudications among and between veterans. Nevertheless, this history is instructive in that these concerns are better met when the Board is given some flexibility in managing the appeals. In this regard, we believe that the purpose of section 7107 was to set broad guidelines for the general order of processing of appeals at the Board to ensure fairness, efficiency, and timeliness in consideration and decision of appeals. At its genesis, the statute was designed to provide fair treatment to all claimants by ensuring that cases were not advanced on the docket for other than good cause and were not advanced based on personal favoritism or other inappropriate influence. The fact that this provision had a lengthy history in Agency regulations prior to the creation of section 7107 or the establishment of judicial review supports the position that its purpose had nothing to do with limiting

22

the Secretary's ability, in considering an appeal or group of appeals that involve the same legal issue and that he has determined would be affected by an interpretation of law provided in a soon-to-be-promulgated regulation or opinion of the General Counsel or this Court or the Federal Circuit, to stay the appeal(s).

As it currently exists, this statute establishes some criteria for accelerating and delaying the adjudication of claims in enumerated circumstances. In that regard, the statute maintains its focus on providing a fair process for all claimants. Thus, we hold that Congress could not have intended to totally preempt the authority of the Secretary, Chairman, and Board to manage the Board and its work to produce fair, efficient, timely, effective review of appeals.

> "[I]t [is] fundamental that a section of a statute should not be read in isolation from the context of the whole act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.'"

*Moreau v. Brown*, 9 Vet.App. 389, 396 (1996) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 (1956))), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997).

### 3. Section 7107 Does Not Prohibit a Stay of Proceedings

As held above, Congress has not specifically addressed in section 7107 (or elsewhere in title 38) the question whether the Secretary may stay the ultimate disposition of a case at the Board pending an interpretation of law. The Secretary has promulgated an implementing regulation concerning section 7107. In pertinent part, it provides:

> (a) *Docketing of appeals*. Applications for review on appeal are docketed in the order in which they are received. Cases returned to the Board following action pursuant to a remand assume their original places on the docket.
> (b) *Appeals considered in docket order*. Except as otherwise provided in this Rule, appeals are considered in the order in which they are entered on the docket.
> (c) *Advancement on the docket*. (1) *Grounds for advancement*. A case may be advanced on the docket on the motion of the Chairman, the Vice Chairman, a party to the case before the Board, or such party's representative. Such a motion may be granted only if the case involves interpretation of law of general application affecting other claims, if the appellant is seriously ill or is under severe financial hardship, or if other sufficient cause is shown. "Other sufficient cause" shall include, but is not limited to, administrative error resulting in a significant delay in docketing the case or the advanced age of the appellant. . . .

23

. . . .

> (d) *Consideration of appeals remanded by the United States Court of Appeals for Veterans Claims.* A case remanded by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action will be treated expeditiously by the Board without regard to its place on the Board's docket.
>
> (e) *Postponement to provide hearing.* Any other provision of this Rule notwithstanding, a case may be postponed for later consideration and determination if such postponement is necessary to afford the appellant a hearing.

38 C.F.R. § 20.900 (2005). The Court holds that the Secretary's regulation, 38 C.F.R. § 20.900, also does not address that question, and, therefore, the principle discussed in *Chevron* – that if "Congress has not directly addressed the precise question at issue," a reviewing court generally must defer to permissible agency constructions of a statutory provision – is not applicable here. *Chevron*, 467 U.S. at 843; *see Barnhart v. Walton,* 535 U.S. 212, 217-18 (2002).

Generally, where a veterans benefits statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Gardner*, 513 U.S. at 118 (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-21 n.9 (1991); *see Allen (Alfred) v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (applying *Gardner* principle to rule in appellant's favor on question of statutory interpretation). Even assuming that the statute in question is a veterans benefits statute rather than a statute setting general guidance for fairness, we cannot conclude that resolution of interpretative doubt in favor of the veteran would favor the petitioners' argument over that of the Secretary. To interpret the statute in the manner suggested by the petitioners could lead to results in many situations not favorable for veterans. Based on the foregoing considerations, we hold that section 7107 is not an absolute limitation on the Secretary's and Board Chairman's authority to manage the administrative appeals system, including the imposition of a stay, where appropriate.

Our colleague in her thoughtful separate opinion agrees that a literal reading of section 7107 to require that the Board decide cases in strict docket number order yields absurd results but, to avoid those absurd results, offers a different interpretation of section 7107. Rather than read section 7107 as not precluding the Secretary from determining whether it is appropriate to stay an appeal (or group of appeals) pending before the Board, our colleague offers an interpretation of section 7107 that essentially creates additional exceptions that effectively dictate to the Secretary how best to manage cases pending before the Board. On the one hand, the separate opinion states that section 7107

24

provides an absolute set of rules, to which Congress intended no exceptions other than those expressly stated, and *narrowly* reads section 7107 as prohibiting VA from staying cases pending before the Board. It states that a "broad exception" to the general docket number order rule in section 7107 in permitting stays is at odds with the plain meaning of section 7107 and is not required to avoid the absurd result reached from a literal reading of section 7107.

On the other hand, the separate opinion would *broadly* read section 7107 not to require the Board to decide appeals in regular docket order. For example, our colleague would hold that the Board "may issue a decision in docket number 16 before, *but relatively contemporaneous with*, a decision in docket number 15," and that the Board could decide later-docketed appeals months after some earlier-docketed appeals. *Post* at __, slip op. at 32 (emphasis in original). In addition, our colleague finds reasonable an interpretation of the terms "considered and decided" in section 7107, which provides that appeals before the Board "shall be considered and decided in regular order," as meaning only "considered." Under such interpretation, the Board complies with section 7107 so long as the appeals reach the Board members for a decision in docket number order but that, because of the complexity or number of issues in an appeal, the appeals need not be "decided" in docket number order. *Post* at __, slip op. at 32-33. Our colleague would further interpret section 7107 so as to allow the Board not to consider cases in regular docket order where the Board needs "guidance on issues necessary to adjudicate those claims." *Post* at __, slip op. at 34-35.

An interpretation of section 7107 to allow such numerous and vast deviations from the strict docket order effectively rewrites the statute. The creation of these additional exceptions, without interpreting any particular terms in the statute, necessarily goes beyond any plain meaning of the statute. In our view, there are a number of circumstances that could warrant the Secretary's having to stay an appeal that is pending before the Board, and, where Congress has chosen not to do so, it is not the role of the Court to dictate to the Secretary how most effectively to administer the VA benefits system to ensure timeliness and fairness. We cannot supplant agency discretion with action by the Court that constrains the authority of the agency to act in the first instance. *Cf. Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004) (describing principal purpose of certain limitations under the Administrative Procedure Act – and of traditional limitations upon mandamus from which they were derived – "is to protect agencies from undue judicial interference with their

25

lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve;" noting that '[i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved – which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management"). It is clear that the VA adjudication system would benefit from the exercise of the Secretary's authority in promulgating a regulation that identifies the circumstances under which he may stay an appeal or group of appeals that are pending at the Board. With respect to the interpretation of section 7107, however, both the majority and separate opinions would recognize certain limited circumstances when it would be appropriate to impose a stay in the processing of individual appeals or classes of appeals that are pending at the Board.

### D. Evaluating Stay in Instant Cases

The Secretarial directive and the Board Chairman's Memorandum state that the bases for the Board's stay of proceedings in appeals at the Board that involve tinnitus claims affected by this Court's decision in *Smith*, *supra*, are "[t]o avoid burdens on the adjudication system, delays in adjudication of other claims, and unnecessary expenditure of resources through remand of final adjudication of claims based on court precedent that may ultimately be overturned on appeal." A. at 1, 4. Regarding the length of the stay, the Board Chairman's Memorandum noted that it was staying action on the claims until the Secretary's directive is rescinded or "until the [Office of General Counsel] provides advice and instruction . . . upon resolution of the ongoing litigation." A. at 4. Regarding the scope of the stay, the Board Chairman stated that the following claims would be stayed: (1) All claims in which a claim for tinnitus was filed prior to June 13, 2003, and a disability rating for tinnitus of greater than 10% is sought; and (2) all claims in which a claim for service connection for tinnitus filed prior to June 10, 1999, was denied on the basis that the veterans' tinnitus was not persistent for purposes of DC 6260. A. at 4-5. The stay also applied to tinnitus claims affected by *Smith*, *supra*, that are remanded to the Board by the Court. A. at 7. The Memorandum directed, however, that the Board process in the usual manner cases not affected by the Court's decision in *Smith*, such as those involving increased-rating claims filed after June 13, 2003, and that

26

the Board adjudicate, as appropriate, in multiple-issue cases all issues that are not subject to the stay. A. at 5.

As previously outlined, section 7107 predates the creation of this Court and the provision of judicial review for final decisions of the Board. No decision of this Court has previously addressed the implications of the Secretary's authority to stay cases pending before the Board while he seeks to appeal a decision potentially affecting such cases. But, it is clear to the Court that that issue is not governed by section 7107.

While the Court in the past has alluded to the understandable desire of an agency, on occasion, to seek review of a decision of this Court and perhaps to stay its application, pending appeal, to other cases, *see Tobler*, 2 Vet.App. at 12, the Court has never addressed the appropriate avenue to seek such a stay. We hold now that the Secretary's authority to stay cases at the Board does not include the unilateral authority to stay cases at the Board (or RO) pending an appeal to the Federal Circuit of a decision by this Court. To allow such a stay would permit a unilateral action by the Secretary to stay the effect of one of this Court's decisions pending the Secretary's appeal to the Federal Circuit. Such a stay does not affect solely the Secretary's own internal matters – such as a stay pending the promulgation of his own regulations or pending the issuance of a VA General Counsel opinion or a stay of its own Agency order. Rather, such a stay directly impacts numerous decisions of this Court. For all cases stayed at the Board pending a decision by the Federal Circuit in the controlling case, the stay denies or delays the implementation of the Court's controlling decision. And, for all cases that have been remanded by this Court for the Board to apply the controlling case and that are then stayed at the Board, the stay involves the implementation not only of the Court's controlling case, but also of the Court's remand orders, that is, decisions of the Court that remanded claims for application of the controlling decision. Such unilateral action by the Secretary is contrary to the concept of judicial review, and, as to these latter cases that involve remands from this Court, ignores the mandate that "[a] case remanded by the United States Court of Appeal for Veterans Claims for additional development or other appropriate action will be treated expeditiously by the Board without regard to its place on the Board's docket." 38 C.F.R. § 20.900(d); *see* 38 U.S.C. § 7112 (providing that "Secretary shall take such actions as may be necessary to

provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims").

This Court's decisions are "binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board . . . , and the Secretary in adjudicating and resolving claims." *Tobler*, 2 Vet.App. at 14. The binding nature of our decisions stems from the common law doctrine of precedent or stare decisis. *See Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 969-70 (3rd Cir. 1979). The essence of the doctrine is that "the rule of the case creates a binding legal precept." *Id*. "A judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy. . . . '[P]recedents set by the higher courts . . . are conclusive on the lower courts, and leave to the latter no scope for independent judgment or discretion.'" *Id.* (quoting H.C. BLACK, LAW OF JUDICIAL PRECEDENTS 10 (1912)). Although a stay by the Secretary of all cases potentially affected by this Court's decision is not a refusal to consider the applicability of a controlling precedent of this Court, it nevertheless constitutes an action withholding application of this Court's precedent. The Secretary, however, is bound by the decisions of this Court. Thus, "a disagreement by the [Secretary or Board Chairman] with a decision of this Court is simply an academic exercise that possesses no authoritative effect" and for the Board to predicate an order on its disagreement with this Court's interpretation of a statute or regulation is for it to operate outside the law. *Id*. at 970. To hold otherwise would allow the Secretary to stay the effect of one of this Court's decisions every time he considers the possibility of appeal of one of our decisions or actually undertakes such an appeal. The Secretary's otherwise permissible discretion cannot act to eviscerate this Court's authority and the rule of precedent.

The Court now holds that where the Secretary desires to stay the effect of any decision from this Court pending appeal, the proper course is to file in the court that has jurisdiction over the particular case a motion to stay the effect of that case. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (considering motion for stay of execution of judgment and imposition of injunction entered by district court during pendency of appeal to Federal

Circuit and discussing four factors that guide court's discretion to issue a stay pending appeal – (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies). The Court holds today that any unilateral imposition of a stay by the Board Chairman or Secretary as to the effect of any of this Court's decisions is unlawful.

Accordingly, as to the nature of the Secretary's action and the Board Chairman's stay here, it is based on this Court's decision in *Smith*, *supra*, and the Secretary's desire to pursue an appeal of that decision in the Federal Circuit. He has unilaterally stayed the effect of this Court's decision pending his appeal. The stay does not affect solely the Secretary's own internal matters but directly impacts this Court's directive in *Smith* that certain tinnitus claims be adjudicated in a certain manner. To proceed with a stay without filing a motion for a stay at the appropriate appellate court and unilaterally continue a stay of the effect of this Court's decision in *Smith* is henceforth unlawful. *See Tobler*, 2 Vet.App. at 14. We stay our judgment here, however, for 30 days. Pursuant to Rule 36 of this Court's Rules of Practice and Procedure, judgment will enter 30 days after the date of this opinion. U.S. VET. APP. R. 36. This limited stay will afford the Secretary the opportunity to file a motion for a stay in *Smith* in the Federal Circuit, which is the court that currently has jurisdiction over *Smith*, and it is the implementation of *Smith* the Secretary wishes to stay. *See NOVA I* and *NOVA II*, both *supra* (directing Secretary to stay processing of certain claims under sections 1311(a)(2) and 1318); *Levi v. Principi*, 16 Vet.App. 87, 87-88 (2002) (per curiam order) (filing of notice of appeal seeking review in Federal Circuit deprives this Court of jurisdiction over an appeal). The procedural posture of *Smith* necessitates that any motion to stay the effect of *Smith* be filed in the Federal Circuit. This does not, however, change a preferred approach that a litigant file any such motion in this Court during the period that this Court has jurisdiction over the particular case. *Cf.* FED. R. APP. P. 8 (providing that party "must ordinarily move first in the district court" for "a stay of the judgment or order of a district court pending appeal"). The petitioners are not precluded from filing a petition in this Court after this 30-day period based on any action by the Secretary that is "unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2).

### III. CONCLUSION

On the basis of the foregoing analysis and upon consideration of the parties' pleadings and argument, the Court holds that the petitioners have not established a clear right to a writ, and the petition is therefore DENIED. The Clerk will enter judgment 30 days after the date of this opinion. U.S. VET. APP. R. 36.

SCHOELEN, *Judge*, concurring in part and dissenting in part: I fully agree with the Court's conclusion that the Secretary does not have the authority to stay cases at the Board pending an appeal to the Federal Circuit of a precedential decision of this Court – in this case, our holding in *Smith v. Nicholson*, 19 Vet.App. 63 (2005). The effect of the Secretary's and Board Chairman's memoranda at issue in this matter is to circumvent our holding in *Tobler v. Derwinski*, 2 Vet.App. 8 (1991), that

> a decision of this Court, unless or until overturned by this Court *en banc*, the United States Court of Appeals for the Federal Circuit, or the Supreme Court, is a decision of the Court on the date it is issued; any rulings, interpretations, or conclusions of law contained in such a decision are authoritative and binding as of the date the decision is issued and *are to be considered and, when applicable, are to be followed* by VA agencies of original jurisdiction, *the Board of Veterans' Appeals, and the Secretary* in adjudicating and resolving claims.

*Id.* at 14 (second and third emphases added). I further agree with the Court's conclusion that, "where the Secretary desires to stay the effect of any decision from this Court pending appeal, the proper course is to file in the court that has jurisdiction over the particular case a motion to stay the effect of that case." *Ante* at 28. I write separately, however, because I disagree with the Court's interpretation of 38 U.S.C. § 7107, its implementing regulation, 38 C.F.R. § 20.900 (2005), and the Secretary's general authority to stay cases pending before the Board.

# I. INTERPRETATION OF 38 U.S.C. § 7107

The petitioners argue that 38 U.S.C. § 7107 prohibits the Secretary and the Board Chairman from imposing a stay on the petitioners' appeals before the Board. Section 7107 requires the Board to "consider[] and decide[]" each appeal "in regular order according to its place upon the docket." 38 U.S.C. § 7107(a)(1). This general rule is subject to six enumerated exceptions. A case may be advanced on the docket pursuant to section 7107(a)(2) for three reasons: (1) The case involves an interpretation of law of general application affecting other claims; (2) the appellant is seriously ill or under severe financial hardship; or (3) other sufficient cause shown. Section 7107(f) also provides for screening of cases (1) to determine the adequacy of the record or (2) to develop a record found to be inadequate. Section 7107 provides only one instance where the Board may delay consideration and decision of an appeal – "if such postponement is necessary to afford the appellant a hearing." 38 U.S.C. § 7107(a)(3). It is undisputed that none of these exceptions apply to the petitioners' appeals.

Section 7107 is silent regarding whether the Secretary may stay consideration of appeals pending the issuance of an interpretation of law that would affect those appeals – such as, in this case, a Federal Circuit decision either upholding or reversing our decision in *Smith*. The Secretary seeks a new exception to the general docket-number-order rule in section 7107 for instances when the Secretary disagrees with a precedential opinion of this Court, for the Secretary to seek review of that decision in the Federal Circuit. This exception has no basis in statute or in the Secretary's own regulation interpreting that statute. *See* 38 U.S.C. § 7107; 38 C.F.R. § 20.900.

The Court reaches the conclusion that a literal application of the statute would yield an absurd result. *Ante* at 17. I generally agree that a literal reading of section 7107 to require that the Board decide cases in strict docket number order, *e.g.*, 1, 2, 3, 4, . . . , etc., would yield absurd results. However, a general rule of statutory construction provides that statutes are to be read in a manner that *avoids* absurd results. *See, e.g., Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 452-55 (1989) (refusing to read the word "utilized" in a manner that would lead to an absurd interpretation of the Federal Advisory Committee Act, Pub. L. No. 92-463, 86 Stat. 770 (1972)); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001) (construing the provisions of 28 U.S.C. § 2412 in order to avoid reaching an absurd result); *Faust v. West*, 13 Vet.App. 342, 350 (2000) (reading

38 C.F.R. §§ 4.1, 4.2, and 4.10 together with 38 C.F.R. § 3.343 in order to avoid reaching an absurd result); *Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc) (construing 38 U.S.C. § 6103(a) in order to avoid reaching an absurd result); 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.07 (6th ed. 2000) [hereinafter SUTHERLAND]. The petitioners stated at oral argument that they were not seeking such a literal reading that interprets section 7107 in a manner "'demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87, *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see* 140 CONG. REC. S4758 (1994) (statement of Sen. Rockefeller) (stating that "if the reality is that it takes months or years to resolve a claim, the individual claimant is not being afforded proper treatment. To force a veteran to wait for more than 2 years for a [Board] decision – after he or she has already waited over 200 days for a regional office decision on the original claim – is unconscionable.").

Turning to the intent of Congress in drafting section 7107, it is Congress's silence regarding whether appeals pending before the Board may be stayed that speaks volumes regarding Congress's intent. The legal maxim "expressio unius est exclusio alterius" means "[t]he expression of one thing is the exclusion of another." BLACK'S LAW DICTIONARY 1635 (7th ed. 1999); *see* SUTHERLAND § 47.23. Because Congress (and the Secretary by regulation) provided specific, enumerated exceptions to the general docket-number-order rule in section 7107, I would conclude that Congress did not intend to provide any other exceptions that it did not expressly create. *See, e.g., Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) (concluding that "Congress did not intend to allow exceptions to the rule of finality in addition to [those] that it expressly created" (citing, *e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993))).

Another applicable rule of statutory interpretation is that "[i]n attempting to apply a statute to a situation that was not intended by its drafters, the interpreting court should not rely on literalisms, technical constructions, or so-called formal rules of interpretation, but rather should rely on the breadth of objectives of the legislation and the common sense of the situation." SUTHERLAND § 46.02; *see also Gardner*, 1 Vet.App. at 587 (stating that the "'absurd result' exception to the plain meaning rule is, however, narrow and limited to situations 'where it is quite impossible that Congress

could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone.'" (quoting *Pub. Citizen*, 491 U.S. at 470-71 (Kennedy, J., concurring))). Common sense in this case would dictate that Congress did not intend that the Board must issue its decisions in strict docket number order. Rather, the clear and unambiguous language in section 7107 states that the Board cannot expedite or delay consideration and decision of an appeal (or, in this case, a group of appeals), except as authorized by section 7107.

A broad exception to the general docket-number-order rule in section 7107(a)(1) for staying appeals affected by a case pending in the Federal Circuit is at odds with the plain meaning of section 7107. Indeed, no veterans benefits statute or regulation supports the notion that claims can be stayed for some indefinite period rather than adjudicated as promptly as possible. However, the absurd result reached by reading section 7107 literally can be avoided merely by holding that the Board is not required to issue decisions in strict docket number order, but, for example, may issue a decision in docket number 16 before, *but relatively contemporaneous with*, a decision in docket number 15.[1] Hence, the broad exception to section 7107 that the Secretary suggests is in no way required to avoid the absurd result reached from a literal reading of the statute.

## II. INTERPRETATION OF 38 C.F.R. § 20.900

The Secretary has issued a regulation, 38 C.F.R. § 20.900, implementing section 7107 and interpreting some of the language in section 7107. For example, § 20.900 provides that the phrase "other sufficient cause shown" in section 7107(a)(2)(c) includes the advanced age of the appellant. 38 C.F.R. § 20.900(c)(1). Yet, this regulation does not provide for an exception to the docket-number-order rule for issues decided in a precedential opinion of a Court with which the Secretary disagrees and which the Secretary appeals. *See* 38 C.F.R. § 20.900. Thus, applying the expressio unius principle to the Secretary's own regulation yields the same result – the Secretary did not intend, in issuing § 20.900, to include an exception allowing appeals pending before the Board to be stayed pending an appeal of a precedential decision of a court.

---

[1]Although I do not define "relatively contemporaneous," in light of the factors discussed *infra*, it would not be unreasonable for some later-docketed appeals to be decided months after some earlier-docketed appeals.

Furthermore, although the Court holds that § 20.900 does not provide any more insight into the interpretation of section 7107, *see ante* at 23, I would respectfully disagree. At oral argument, the parties disputed the meaning of the phrase "considered and decided" in section 7107(a)(1). To the extent that there may be ambiguity in that phrase, and to the extent a literal reading of section 7107 yields an absurd result, I would hold that § 20.900 reasonably interprets the phrase "considered and decided" in section 7107(a)(1) in a manner that avoids an absurd result. *See Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002) (holding that to the extent the "'unambiguously expressed intent of Congress'" is not clear, VA may issue regulations "'based on a permissible construction of that statute'" (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984))). The key difference between section 7107 and § 20.900 is that § 20.900(b) states that "appeals are *considered* in the order in which they are entered on the docket." Section 7107 provides that appeals before the Board "shall be *considered and decided* in regular order." I would hold that any potential absurd result reached by a literal interpretation of section 7107 is avoided by the *Secretary's* interpretation of the phrase "considered and decided" as "considered."[2] *Compare* 38 U.S.C. § 7107(a)(1) *with* 38 C.F.R. § 20.900(b).

For example, some appeals involve more issues than others and in those appeals involving more issues, it will generally take more time for the particular veterans law judge assigned to an appeal to research, decide, and write a decision in an appeal. In addition, some issues are more complex than others, and more complex issues will generally take longer to resolve than simpler ones.[3] A final Board decision in an appeal may even be delayed for personal reasons of the veterans

---

[2]At oral argument, the Secretary argued that the petitioners' appeals were "considered" by the Board in order to determine whether the instant stay was appropriate. This argument is unpersuasive. When the use of the word "considered" in § 20.900(b) is examined in the context of the use of the phrase "considered and decided" in section 7107(a)(1), it is clear that the term "considered" means that the appeals are considered *on the merits*. The stay specifically delays consideration of the petitioners' appeals on the merits.

[3]At oral argument the petitioners provided an apt analogy regarding the structure of the Board and how cases are distributed. The petitioners compared the Board's decisionmaking process to the checkout lines at a large store. In this analogy, each Veterans Law Judge would be like a cashier and each appellant would be like a customer. An appeal would be "considered" when the cashier begins ringing up an order, and would be decided when the customer leaves the store. A postponement of consideration would be analogous to a price check. Just as some customers at a store have more items than others, some appeals involve more issues than others, and thus, some lines will likely move faster than others at any given time. Under the petitioners' desired interpretation of section 7107, it would be sufficient that the appeals get into their respective line in docket number order.

law judge, such as illness or annual leave. The Secretary's interpretation of "considered and decided" as "considered" in § 20.900(b) reasonably allows for these situations and is a reasonable interpretation of section 7107 entitled to deference by a reviewing court. *See Gallegos*, 283 F.3d at 1312 (stating that the Court must defer to "VA's reasonable interpretation of a statutory provision when the law . . . leaves 'a gap for an agency to fill,'" and the agency fills that gap with an "interpretive regulation 'based upon a permissible construction of the statute.'" (quoting *Chevron*, 467 U.S. at 843)). Thus, the *Secretary's* interpretation of section 7107 in § 20.900 avoids any potential absurd result of a literal reading of section 7107.

### III.  CASES INVOLVING STAYS

The Secretary cites two prior instances where Board stays have been approved. First, in *Lane v. West*, 11 Vet.App. 506 (1998) (per curiam order), the Court considered whether to issue a writ of mandamus compelling the Board to issue a decision on the petitioner's CUE claim. However, the circumstances in *Lane* can be distinguished from those of the instant case. The CUE motions stayed by the Board in *Lane* were stayed because there was *no guidance* implementing the 1997 CUE Act. *See id.* at 508. That is, there were no standards by which the Board could adjudicate a CUE claim until the Secretary could issue final rules implementing the 1997 CUE Act. In the petitioners' cases, the issues are ripe for a Board decision. The Board has guidance on how to proceed. Our holding in *Smith*, *supra*, is presently binding on the Board and controls the interpretation of law involved in the petitioners' claims. *See Tobler*, 2 Vet.App. at 14.

The Secretary also relies on the Federal Circuit's decisions in *National Organization of Veterans Advocates, Inc. v. Secretary of Veterans Affairs* (*NOVA v. Sec'y*), 260 F.3d 1365 (Fed. Cir. 2001) [hereinafter *NOVA I*], and *NOVA v. Sec'y*, 314 F.3d 1373 (Fed. Cir. 2003) [hereinafter *NOVA II*]. In *NOVA I*, the Federal Circuit directed VA to stay the processing of claims under 38 U.S.C. § 1318, pending an expedited rulemaking that would harmonize the provisions of two inconsistent regulations. *NOVA I*, 260 F.3d at 1380-81. However, there are also several distinctions between the instant case and *NOVA I* and *II*. First, it was the Federal Circuit – *not the Secretary* – that imposed the stay of Board appeals in *NOVA I*. *See id.* at 1380. In this case, the Secretary has chosen to impose the stay. The Secretary has not attempted to seek a stay of appeals pending before

the Board by filing an appropriate motion either in this Court or in the Federal Circuit. *See, e.g., id.* at 1380-81 (Federal Circuit ordering VA to stay all proceedings involving claims under section 1318 whose outcome depends on the regulations at issue). In *NOVA I*, the stay was determined to be necessary because VA had issued *inconsistent and potentially invalid regulations* that would hinder the Board in adjudicating the petitioners' appeals. In this case, there is no inconsistency. The law is clear, but the Secretary disagrees with our holding in *Smith*, *supra*, and has appealed the decision. Thus, the circumstances present in this case are nothing like those in the *NOVA* cases.

I respectfully find the Court's determination that 38 U.S.C. § 7101(a), combined with 38 U.S.C. §§ 501(a)(4) and 511 gives the Secretary inherent or implicit authority to stay cases to be overly broad. Instead, the impetus for limited stay authority in circumstances such as those present in the *Lane* and *NOVA* cases results from the *inability* of the Board to adjudicate those claims because of the lack of guidance on issues necessary to adjudicate those claims. In addition, section 7107 would not be implicated by the inability of the Board to adjudicate such cases because it would be absurd to read section 7107 to require the Board to adjudicate claims when it cannot do so. *See Public Citizen*, *Thayer*, *Faust*, and *Trilles*, all *supra*; SUTHERLAND § 46.07. I do not read sections 501, 511, and 7101 to give the Secretary the authority to stay claims pending before the Board beyond this limited circumstance.

## IV. CONCLUSION

In light of the foregoing, I would avoid the absurd result reached by a literal reading of section 7107 without reading the statute so broadly as to provide the Secretary the general authority to stay appeals pending before the Board. I would read section 7107 to give the Board the flexibility to decide later-docketed appeals before earlier-docketed appeals in the ordinary course of business so long as the decisions are issued relatively contemporaneously. Thus, I would conclude that section 7107 prevents the Secretary or the Board Chairman from staying a broad class of cases indefinitely because the plain, obvious intent of section 7107, and the Secretary's implementing regulation, § 20.900, is to require that the Board generally decide appeals in the order in which they are docketed.

Furthermore, I read very narrowly the Court's conclusion that the Secretary's management authority over the Board to include "a decision on whether a particular appeal pending at the Board must be stayed pending an interpretation of law – an interpretation to be provided by the Secretary in a regulation or a General Counsel Opinion." *Ante* at 13. I believe that this authority to stay is limited solely to instances where an interpretation of law is *absolutely necessary* to adjudicate a claim (*see NOVA II*, *NOVA I*, and *Lane*, all *supra*), and without such an interpretation, the Board clearly cannot decide the appeal. In these instances, section 7107 should not be read to prevent the Board from staying such appeals for the Secretary or the General Counsel to provide interpretive guidance *expeditiously*. However, in spite of my different interpretation of section 7107 and § 20.900, I join the holding of the Court that the proper course of action for the Secretary in this case is to file a motion in the Federal Circuit for a stay of the appeals affected by *Smith*, *supra*.