﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 190830-27856
DATE: April 30, 2020

ORDER

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for a heart disability is denied.

REMANDED

Entitlement to service connection for hepatitis C is remanded.

Entitlement to service connection for bilateral hearing loss is remanded.

FINDINGS OF FACT

1. The evidence is in relative equipoise as to whether the Veteran's current tinnitus is related to in-service acoustic trauma.

2. Despite the Veteran's presumptive exposure to herbicide agents due to his documented service in the Republic of Vietnam during the Vietnam War, the preponderance of the evidence shows that a heart disability was not present in service or until many years thereafter and is not related to service or to an incident of service origin.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for tinnitus have been satisfied. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

2. The criteria for service connection for a heart disability have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from April 1966 to April 1969, including in the Republic of Vietnam.

The appeal comes to the Board of Veterans' Appeal (Board) under the modernized review system, or Appeals Modernization Act (AMA). 38 C.F.R. § 19.2. The Veteran submitted a timely AMA Notice of Disagreement with an August 2019 rating decision that denied service connection for bilateral hearing loss, tinnitus, a heart condition, and hepatitis C. He requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is remanding the claim of service connection for hepatitis C for further development, this additional evidence will be considered by the RO in the adjudication of that claim.

In an April 2020 appellate brief, the Veteran’s representative argued the Board should grant service connection for hypertension as part of the claim seeking service connection for a heart disorder. However, hypertension is a vascular disorder, not a heart disorder. See 38 C.F.R. § 4.104 (listing hypertension as a disease of the arteries and veins and not a disease of the heart). Furthermore, the AOJ did not adjudicate service connection for hypertension as part of the claim for service connection for a heart disorder. Accordingly, the Board finds the Veteran’s claim seeking service connection for a heart disorder does not include service connection for hypertension and cannot adjudicate the issue. The Veteran may submit a claim to the AOJ or notify the AOJ that the issue is still pending.

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.03. Service connection may also be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disease was incurred in-service. 38 C.F.R. § 3.303(d).

In order to establish service connection for the claimed disability, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. See 38 C.F.R. § 3.303; see also Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Where a Veteran served 90 days or more during a period of war or during peacetime service after December 31, 1946, and a chronic disease, including tinnitus, becomes manifest to a degree of 10 percent or more within one year from the date of termination of such service, such disease shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. If a condition listed as a chronic disease in § 3.309(a) is noted during service, but is either shown not to be chronic or the diagnosis could be legitimately questioned, then a showing of continuity of related symptomatology after discharge is required to support the claim. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (holding that the continuity of symptomatology provisions of 38 C.F.R. § 3.303(b) only apply to a chronic disease listed in § 3.309(a)). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When a veteran seeks benefits and the evidence is in relative equipoise, the veteran prevails. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). A preponderance of the evidence must be against the claim for benefits to be denied. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

1. Entitlement to service connection for tinnitus.

A March 2019 VA Agent Orange Registry Exam report shows the Veteran currently has tinnitus.

In the August 2019 rating decision, the AOJ made a favorable finding that the Veteran was exposed to hazardous noise levels while driving heavy machinery in service. This favorable finding is binding on the Board. Therefore, the remaining question before the Board is whether the current tinnitus is etiologically related to his military service.

Based on a comprehensive review of the record, the Board finds that the evidence for and against the Veteran's claim is at least in equipoise.

The evidence against the claim include the Veteran’s service treatment records, which do not document complaints of tinnitus during service, and a June 2019 VA audiological examination report that notes the Veteran reported the tinnitus began almost 41 years before the examination, or years after he separated from service. However, the examiner found he could not provide an opinion on the etiology of the tinnitus without resorting to speculation and, as will be further explained in the reasons for remand section, the Board finds this examination is inadequate and cannot serve as the basis of a denial of entitlement to service connection. 

The evidence in favor of the claim includes the Veteran’s otherwise consistent statements associating his tinnitus with in-service noise exposure and VA treatment records that document these reports. The Veteran did not explicitly state his tinnitus began in service, but the Board finds the Veteran’s reports of long-standing tinnitus related to in-service noise exposure imply he contends the tinnitus began during service. Notably, an August 2016 VA audiology evaluation report shows the Veteran reported having long-standing, recurrent tinnitus before he ever filed his claim for service connection. The audiologist noted he had in-service noise exposure. A March 2019 VA treatment record shows he continued to associate his tinnitus with the conceded exposure to hazardous noise levels in service.

The Board finds the evidence in favor of the claim and the evidence against the claim is of equal weight. As noted, the June 2019 VA examination and findings made therein are not adequate, but the Veteran’s service treatment records do not document tinnitus. Importantly, however, the Veteran is competent to identify tinnitus because he is capable of observing ringing in his ears, and the Board finds his reports that he has experienced tinnitus since service to be credible, as they are supported by the August 2016 audiological evaluation report. Notably, the treating audiologist appears to have found the tinnitus could be associated with in-service noise exposure by listing the military noise exposures reported by the Veteran. 

The evidence for and against the claim is in relative equipoise. The Board must therefore resolve all reasonable doubt in favor of the Veteran. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Accordingly, service connection for the back disability is warranted.

2. Entitlement to service connection for a heart disorder.

The Veteran is seeking service connection for a heart disability, which he claims was caused by his exposure to herbicide agents, including Agent Orange, during his service in the Republic of Vietnam.

VA laws and regulations provide that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam war (i.e., January 9, 1962, to May 7, 1975), shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to the contrary. 38 U.S.C. § 1116(a)(3); 38 C.F.R. § 3.307(a)(6)(iii). 

Certain chronic diseases associated with exposure to certain herbicide agents will be service connected on a presumptive basis. 38 U.S.C. § 1116; 38 C.F.R. § 3.309(e). The list of diseases associated with exposure to certain herbicide agents is as follows: AL amyloidosis, chloracne or other acneform disease consistent with chloracne, type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e).

As noted in the introduction of this decision, the Veteran’s representative argued the Board should grant service connection for hypertension as part of the claim seeking service connection for a heart disorder. However, hypertension is a vascular disorder, not a heart disorder. See 38 C.F.R. § 4.104 (listing hypertension as a disease of the arteries and veins and not a disease of the heart). Furthermore, the AOJ did not adjudicate service connection for hypertension as part of the claim for service connection for a heart disorder. Accordingly, the Board finds the Veteran’s claim seeking service connection for a heart disorder does not include service connection for hypertension. However, as the representative noted, the Veteran’s VA treatment records show sinus bradycardia was diagnosed based on the results of an August 2014 VA echocardiogram.

Therefore, the remaining question before the Board is whether the sinus bradycardia is etiologically related to the Veteran’s military service.

The Veteran’s service personnel records show he served the Republic of Vietnam from June 1967 to May 1968. He is therefore presumed to have been exposed to herbicide agents in service. 

However, sinus bradycardia is not one of the specifically enumerated diseases that are service connected on a presumptive basis due to such exposure. 38 C.F.R. § 3.309(e). 

Therefore, the Board finds that the laws and regulations governing service connection on a presumptive bases for herbicide-related diseases do not apply in this case.

Furthermore, the record does not show the sinus bradycardia or a heart disease listed as a chronic disease under 38 C.F.R. § 3.309(a) was diagnosed in the first post-service year. Therefore, the Board finds that the presumptions found at 38 C.F.R. § 3.309(a) also do not apply to the current claim. 

Service connection for the heart disability can nonetheless be established on the basis that such disease resulted from exposure to Agent Orange if affirmative evidence shows such causation. 38 C.F.R. § 3.303(d).

The Veteran’s service treatment records, including a January 1969 separation examination report, are silent for complaints, treatment, or diagnoses related to a heart disability.

Likewise, the post-service record is negative for any complaints, diagnoses, or treatment of a heart disability until the echocardiogram was performed in August 2014, or more than 40 years after the Veteran’s separation from active duty.

The Board finds there is not competent medical evidence that relates the heart disability to the Veteran’s active duty service, including his conceded exposure to herbicide agents therein. The Board acknowledges the AOJ did not arrange for an examination or seek a medical opinion in relation to this claim. However, absent any competent medical evidence suggesting that a heart disability might be related to his service, an examination to secure medical nexus opinions is not necessary. See McLendon v. Nicholson, 20 Vet. App. 27 (2006).

The Board has considered the Veteran's general assertions that his heart disability is related to his service. However, because he is a layperson, he is not competent to opine on the etiology of his heart disability, which is a medically complex question. See Jandreau v. Nicholson, 492 F. 3d 1372, 1377 (2007). 

In the absence of competent evidence linking the Veteran's current heart disability to service, a preponderance of the evidence is against the claim. Accordingly, service connection for a heart disability must be denied.

REASONS FOR REMAND

1. Service connection for hepatitis C is remanded.

The Veteran was not afforded a VA examination in connection with his hepatitis C claim. An examination is required when (1) there is evidence of a current disability, (2) evidence establishing an "in- service event, injury or disease," or that a disease, manifested in accordance with presumptive service connection regulations, occurred which would support incurrence or aggravation, (3) an indication that the current disability may be related to the in-service event, and (4) insufficient evidence to decide the case. See McClendon v. Nicholson, 20 Vet. App. 79 (2006).

The Veteran contends his hepatitis C and its residuals were caused by jet injectors he received vaccines through during service or by glass needles used by the dentists who treated him in service. He provided these contentions in response to an April 2019 VA letter that requested additional information regarding his risk factors for hepatitis C. Notably, the letter lists “accidental exposure to blood by health care works” as a risk factor that the medical community recognizes as associated with hepatitis C.

Under these circumstances, the Board finds the AOJ erred in not affording the Veteran a VA examination to ascertain whether his hepatitis C and its residuals are related to his military service, to include the claimed exposure to contaminated needles. Accordingly, the Board must remand the matter of service connection for hepatitis C for such examination to be provided. See 38 C.F.R. § 20.802.

2. Service connection for bilateral hearing loss is remanded.

The Veteran was provided a VA audiological evaluation in June 2019. However, the examiner found the Veteran’s responses to testing were too variable for him to be able to diagnose the severity and configuration of any hearing loss or provide an etiology opinion. The examiner noted language difficulties and cognitive problems prevented proper testing, but the Board finds it’s not clear whether these difficulties would prevent a different examiner from providing an adequate examination and etiology opinion. Accordingly, the Board finds the AOJ erred in not providing an adequate examination and must remand the matter of service connection for bilateral hearing loss for such examination to be provided. See 38 C.F.R. § 20.802.

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his hepatitis C and its residuals. Following consideration of the evidence of record (both lay and medical), the examiner is asked to address the following:

Provide an opinion as to whether it is at least as likely as not (a 50% or greater probability) that the hepatis C and its residuals manifested during active service or are otherwise etiologically related to active service.

In providing an answer to the above question, the examiner should consider and discuss, among other things, the Veteran’s contention that the hepatitis C and its residuals were caused by jet injectors he received vaccines through during service or by glass needles used by the dentists who treated him in service, and the March 2019 Agent Orange Registry Exam report that notes hepatitis was first diagnosed in 1998 and that the Veteran received a blood transfusion in 1976 after a motorcycle accident. 

In providing the etiology opinion, the examiner is advised that the term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of conclusion as it is to find against it. 

The examiner must include in the medical report the rationale for any opinion expressed. However, if the examiner cannot respond to an inquiry without resorting to speculation, he or she should so state, and further explain why it is not feasible to provide a medical opinion, indicating whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or in the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any hearing loss. Following consideration of the evidence of record (both lay and medical), the examiner is asked to address the following:

Provide an opinion as to whether it is at least as likely as not (a 50% or greater probability) that any hearing loss manifested during active service or is otherwise etiologically related to active service, to include his conceded exposure to hazardous noise levels therein.

In providing the etiology opinion, the examiner is advised that the term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of conclusion as it is to find against it. 

The examiner must include in the medical report the rationale for any opinion expressed. However, if the examiner cannot respond to an inquiry without resorting to speculation, he or she should so state, and further explain why it is not feasible to provide a medical opinion, indicating whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or in the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

 

 

John J. Crowley

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board William A. Skowronski, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.